# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RICHARD E. GREBE,

      Plaintiff,

vs.                                                                                      Civ. 01-833 WWD/KBM

STATE FARM INSURANCE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant State Farm's Motion for Summary Judgment on Plaintiff's Claims for Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing ("Motion") **[Doc. 28]**, filed on March 19, 2002. The Court, having reviewed the parties' submissions and the relevant authorities, finds that Defendant's motion is well taken and should be GRANTED.

**Standard of Review**

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Griffin v. Steeltek, Inc., 160 F.3d 591, 593 (10th Cir.1998). In determining whether the case presents any issues of material fact, we view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, here [Plaintiff Richard Grebe ("Mr. Grebe")]. See MacDonald v. Delta Air Lines, Inc., 94 F.3d 1437, 1440 (10th Cir.1996). Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment. Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1079 (10th Cir. 1999)." Martin v. Kansas, 190 F.3d 1120, 1129 (10th Cir 1999), overruled on other grounds, Board of Trustees v. Garrett, 531 U.S. 356 (2001) (internal quotation marks omitted).

**Factual Background**[1]

From July 1, 1976 until his termination on January 31, 2001, Mr. Grebe was an independent agent for several State Farm insurance companies pursuant to a State Farm Agent's Agreement ("Agreement"). See Ex. A, attached to Br. in Support of Def.'s Mot ("Brief"). The Agreement provided for termination payments to Mr. Grebe for five years following his termination. In addition, if Mr. Grebe terminated his Agreement due to disability, he was eligible for additional benefits under State Farm's Disability Income Plan ("DIP") and Disability Income Plan - Age 65 and Over ("DIP 65"). See Ex. C to Pl.'s Compl., attached as Ex. A to Notice of Removal **[Doc. 1]**. Mr. Grebe also chose to participate in an optional Long-Term Disability Income Insurance plan sponsored by Cigna ("Cigna LTD" plan). See Dep. of Richard Grebe at 34:18-21, Ex. A, attached to Br. in Support of Def.'s Mot. for Summ. J. on the Negligent Misrepresentation Claim; Ex. A to Pl.'s Compl.

In November of 1997, Plaintiff suffered a heart attack and underwent heart surgery. Plaintiff filed an application for Social Security disability benefits in December of 1997. On February 19, 1998, Plaintiff and his wife met with several State Farm representatives, at which time, according to Plaintiff, Defendant indicated that "if [Plaintiff] was determined to be eligible

---

[1]  Facts are compiled from the Plaintiff's Complaint and undisputed factual statements set forth in the parties' briefs.

for social security disability benefits, he would automatically be entitled to disability benefits under the Cigna [LTD] plan." Pl.'s Compl. ¶ 7. Mr. Grebe filed an application for benefits under the Cigna LTD plan, which Cigna denied on October 1, 1998. On February 23, 1999, an Administrative Law Judge for the Social Security Administration determined that Mr. Grebe was entitled to disability benefits. See Ex. B to Pl.'s Compl. However, Cigna continued to deny Mr. Grebe's application for benefits under its LTD plan, denying his request for reconsideration on March 8, 1999[2] and his administrative appeal on June 7, 1999. Mr. Grebe filed suit against Cigna on June 9, 1999 and that litigation was ultimately resolved by a settlement between the parties.

In November of 2000, Plaintiff sent a letter to State Farm requesting termination of his Agreement, effective January 31, 2001. In January of 2001, just prior to termination of his Agreement, Plaintiff told Rick Fox, a State Farm Agency Resources Services Superintendent, that he "hope[d] that State Farm would go back to his disability date to calculate [his] termination benefits rather than . . . [his] actual[] terminat[ion] [date] because he had lost so much business." Def.'s Br. at 6, ¶ 12. After State Farm began making termination payments to Plaintiff based on his termination date of January 31, 2001, Plaintiff sent three letters to State Farm requesting that his benefits be calculated using his disability date rather than his termination date. Plaintiff knew that in asking State Farm to use his disability date, he was asking State Farm to make an exception for him. Plaintiff received no response to his requests for an exception. State Farm has approved DIP and DIP 65 plan benefits for Plaintiff.

---

[2] In a letter affirming its denial of benefits to Mr. Grebe under the LTD plan, Cigna Case Manager Bonita Connally acknowledged receipt of the Social Security decision in favor of Mr. Grebe. See Letter from Connally to Gilstrap, dated March 8, 1999, Ex. I to Ex. B, attached to Def.'s Br. In that letter Ms. Connally stated that "the decision we make concerning [LTD] benefits . . . is independent of any rendering from the Social Security Administration." Id.

3

**Discussion**

As a preliminary matter, I note that Plaintiff fails to specifically dispute Defendant's "Undisputed Facts" 1-4, 6-12, and 14-18 set forth in Defendant's brief in support if its motion for summary judgment. Accordingly, these statements are deemed admitted under the local rules. See D.N.M.LR-Civ. 56(1)(b) ("All material facts set forth in the statement of the Movant will be deemed admitted unless specifically controverted.").

**Breach of Contract**

In his Complaint, Plaintiff alleges that he "fulfilled all procedural requirements for eligibility to receive benefits pursuant to the Cigna policy plan and contract, including continuous payment of premiums and submission of the notice of claim, and was determined to be eligible to receive social security disability benefits." Pl.'s Compl. at 3, ¶ 9. Plaintiff further claims that the alleged "representations made by State Farm regarding eligibility for benefits pursuant to the Cigna plan upon certification of eligibility to receive social security disability benefits were untrue and misleading." Id. ¶ 11. Thus, Plaintiff contends that State Farm breached its contract with Mr. Grebe when it "negligently and incompletely performed its obligations to [Mr. Grebe] to adequately and accurately inform him and represent to him the benefits to which he would be entitled at termination." Pl.'s Mem. in Resp. to Def.'s Mot. ("Response") **[Doc. 30]** at 2.

However, even assuming that State Farm misrepresented the eligibility requirements of the Cigna LTD plan, Plaintiff fails to present evidence that State Farm violated a contractual obligation under its Agreement with Mr. Grebe. Plaintiff concedes that under the Agreement "payments for the first sixty months following the termination and [disability benefits paid under the] DIP and DIP 65 [plans are] based upon commissions earned in the twelve months preceding

4

the termination." Id. Plaintiff does not allege that State Farm refused to provide termination payments, DIP benefits or DIP 65 benefits in accordance with the provisions of the Agreement. Indeed, Plaintiff does not allege that State Farm failed to abide by any of the terms set forth in the Agreement.

While Mr. Grebe alleges that State Farm failed to accurately represent the eligibility requirements for a disability benefit provided by Cigna, Mr. Grebe does not contend that State Farm misrepresented the benefits provided by State Farm pursuant to its Agreement with Plaintiff. Plaintiff fails to cite to any contractual provision that obligates State Farm to advise its agents with respect to the timing of termination. Finally, the Agreement specifically provides that it "constitutes the sole and entire Agreement between the parties hereto." Agreement, Ex. A attached to Def.'s Br. The Court will not rewrite a valid agreement by imposing an obligation not found in the express terms of that agreement. See Melnick v. State Farm Mut. Auto. Ins. Co., 106 N.M. 726, 731, 749 P.2d 1105, 1110 (1988) (construing a fully integrated, written contract). Because Plaintiff fails to produce evidence that Defendant violated a contractual obligation to Plaintiff, summary judgment will be granted in favor of Defendant on Plaintiff's breach of contract claim.

**Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiff wrote to State Farm several times requesting that his benefits be calculated using his disability date rather than his termination date. Plaintiff alleges that Defendant breached its duty of good faith and fair dealing when it failed to respond to Plaintiff's several requests to

5

"reconsider the matter of the amount of termination benefits."[3] Pl.'s Compl. at 4, ¶ 13. Specifically, Plaintiff argues that "[b]ecause State Farm ignored [Mr. Grebe's] requests to base termination upon the time when he should have received his Cigna benefit,[4] . . . [State Farm is] liable for breaching the agency agreement based upon the covenants of good faith and fair dealing." Pl.'s Resp. at 1 (emphasis added).

"[E]very contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." Paiz v. State Farm Fire and Cas. Co., 118 N.M. 203, 212, 880 P.2d 300, 309 (1994). However, New Mexico is in agreement "with those courts that have refused to apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated, written contract." Melnick, 106 N.M. at 731, 749 P.2d at 1110. In addition, "the implied covenant of good faith and fair dealing cannot provide the foundation for terms not in a contract." Ewing v. State Farm Mut. Auto. Ins. Co., 6 F.Supp.2d 1281, 1289 (D.N.M. 1998) (citing Watson Truck & Supply Co. v. Males, 111 N.M. 57, 801 P.2d 639, 642 (1990)).

Plaintiff concedes that under the terms of the Agreement "payments for the first sixty months following the termination and [disability benefits paid under the] DIP and DIP 65 [plans are] based upon commissions earned in the twelve months preceding the termination." Pl.'s Resp. at 2 (emphasis added). Plaintiff does not point to any exceptions in the Agreement regarding the date to be used for the calculation of termination benefits. Finally, Plaintiff points to no evidence

---

[3] Plaintiff does not allege that Defendant would have granted his request had it responded.

[4] Plaintiff does not contend that State Farm's alleged misrepresentation resulted in the denial of his application for Cigna LTD benefits.

that the Agreement imposed an obligation on State Farm to grant Plaintiff's request to use his date of disability in calculating termination benefits. Absent such evidence, this Court cannot "imply a term to effect such a purpose under the covenant of good faith and fair dealing." Watson, 111 N.M. at 60, 801 P.2d at 642.

Plaintiff fails to show that Defendant's alleged duty to respond to his requests arises from contractual obligations set forth in the Agreement between the parties. Accordingly, summary judgment will be granted in favor of Defendant on Plaintiff's claim of breach of implied covenant of good faith and fair dealing.

**Conclusion**

For all of the reasons set forth above, the Court finds that Defendant's motion for partial summary judgment on Plaintiff's claims of breach of contract and breach of implied covenant of good faith and fair dealing should be granted.

WHEREFORE,

IT IS ORDERED that Defendant's Motion for Summary Judgment on Plaintiff's Claims for Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing **[Doc. 28]** is GRANTED and Plaintiff's claims for breach of contract and breach of implied covenant of good faith and fair dealing are hereby DISMISSED with prejudice.

_____
UNITED STATES MAGISTRATE JUDGE